IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**BONEFACIO W. GONZALES,**

       **Plaintiff,**

v.                                                                                                  CIV No. 97-162 JP/LFG

**JAMES DICKIE, and
LIN M. HALL, in their
individual capacities,**

       **Defendants.**

**MEMORANDUM OPINION AND ORDER**

On July 10, 1998, Defendants filed two motions for summary judgment: (1) "Motion for Partial Summary No. I: Fourth Amendment Illegal Seizure and Excessive Force Claims and Fourteenth Amendment Conspiracy Claim" (Doc. No. 23), addressing Counts I through III of Plaintiff' Complaint; and (2) "Motion for Partial Summary Judgment No. II: State Law False Arrest, False Imprisonment, Assault, Battery and Malicious Prosecution Claims" (Doc. No. 27), addressing Counts IV through VIII of Plaintiff' Complaint.

Plaintiff' Complaint, filed February 10, 1997, sets forth the following claims:

> Count I: "Deprivation of Rights under the Fourth Amendment: Arrest without Just and Probable Cause";
> Count II: "Deprivation of Rights under the Fourth Amendment: Excessive Use of Force";
> Count III: "Deprivation & Conspiracy to Deprive Plaintiff of Right to Due Process under the Fourteenth Amendment"
> Count IV: "Assault";
> Count V: "Battery";
> Count VI: "False Arrest";
> Count VII: "False Imprisonment"; and
> Count VIII: "Malicious Prosecution."

On July 16, 1998, I discussed the pending motions with counsel during a pretrial

conference. Plaintiff was represented by Charles Fisher, Esq. and Defendants were represented by Stephen French, Esq. After a thorough review of the facts, law, and arguments of counsel, I conclude that summary judgment should be granted on Plaintiff's Fourth Amendment illegal seizure claim (Count I), Fourteenth Amendment conspiracy claim (Count III), and Plaintiff's state law claims of false arrest (Count VI), false imprisonment (Count VII) and malicious prosecution (Count VIII).

## I. FACTUAL BACKGROUND

The facts in the light most favorable to the Plaintiff are as follows.[1] During the late evening of January 19, 1996, New Mexico State Police Trooper James Dickie ("State Police Trooper Dickie") was patrolling in the area of Tijeras Canyon, Bernalillo County, New Mexico, in his New Mexico State Police vehicle. That same evening, Bernalillo County Sheriff's Department Chaplain Lin M. Hall ("Chaplain Hall"), was on a "ride along" with State Police Trooper Dickie.

While driving on Interstate Highway 40 ("I-40") in Tijeras Canyon, State Police Trooper Dickie and Chaplain Hall heard an Albuquerque Police Department ("APD") radio transmission report that a red sports car was traveling eastbound on I-40 at a high rate of speed. After coming to a stop in the area of the I-40 mile marker 180, State Police Trooper Dickie and Chaplain Hall observed a red sports car, a red Dodge Stealth ("Stealth"), traveling very fast eastbound on I-40. State Police Trooper Dickie used his radar unit to determine the speed of the Stealth, and discovered that it was moving at a speed of one hundred and six (106) miles per hour.

After the Stealth passed the location of the State Police vehicle, State Police Trooper

---

[1] Plaintiff does not contest the facts as recited by the Defendants up to the point in time when the Defendants encountered Plaintiff.

Dickie turned on his emergency lights and siren and pursued the Stealth. Despite the activation of the police vehicle's emergency equipment, the Stealth did not stop and continued to evade Trooper Dickie going at a fairly high rate of speed, until the Stealth left I-40 at Exit 181.

During the pursuit, State Police Trooper Dickie and Chaplain Hall could only see a silhouette of the driver, the sole occupant of the Stealth. They could neither describe the driver nor determine the driver's gender.

After the Stealth exited I-40, neither the Stealth nor the police vehicle traveled faster than approximately 30 miles per hour because there was snow on the ground, and because the Stealth had hit a curb on the Exit 181 exit ramp. After exiting I-40, the police vehicle remained behind and in close proximity to the Stealth. Eventually, the Stealth turned off of the paved road on which it and the police vehicle had been traveling, onto a "fairly long" unpaved track leading to the mobile home in front of which it ultimately parked. At the time the Stealth's driver "drew up" outside the mobile home, the police car was turning off of the paved road onto the track. At the moment the Stealth turned left between the mobile home and a trailer loaded with firewood, State Police Trooper Dickie, for a "split second," lost sight of all but the right rear quarter panel of the Stealth.

The Stealth parked in front of Plaintiff's mobile home. The mobile home was at most only a few feet away from where the driver parked the Stealth.

Throughout the time State Police Trooper Dickie and Chaplain Hall were pursuing the Stealth, Plaintiff was inside his mobile home watching television and drinking beer.

Plaintiff' brother, Finiano Gonzales ("Finiano"), was driving the Stealth on the evening of January 19, 1996. Plaintiff had not opened the Stealth's driver's door, sat in the driver's seat or

touched the Stealth throughout that day, or through the time of his arrest.[2]

After hearing some noise outside of his mobile home, Plaintiff went outside and approached the Stealth. When the police officers arrived, he was standing approximately four inches from the front passenger side bumper of the car, and about four inches away from the step outside the front door of the mobile home.

As the police vehicle approached the Stealth, which had parked in front of Plaintiff's mobile home, Finiano was no where in sight. State Police Trooper Dickie stopped, and exited the police vehicle with his firearm drawn in a "low-ready position." State Police Trooper Dickie immediately ordered Plaintiff to stop. State Police Trooper Dickie could see that the Plaintiff had nothing in his hands which could be used as a weapon. State Police Trooper Dickie then approached Plaintiff who was standing next to the Stealth. When State Police Trooper Dickie ordered Plaintiff to stop, Plaintiff stopped immediately, and froze. Plaintiff gave no indication that

---

[2]Admittedly, the testimony supporting the Plaintiff's version of the events which unfolded during the late evening hours of January 19, 1996 is very difficult to believe. For Plaintiff's version to be true, Finiano, while being pursued by State Police Trooper Dickie and Chaplain Hall, would have had to, in a matter of *seconds* at most, slow the Stealth upon approaching the mobile home, park and exit the Stealth, and run out of the line of vision of the police officers and Plaintiff. Meanwhile, simultaneously, within the same few *seconds*, Plaintiff, probably in an intoxicated state, would have had to exit the front door of his mobile home and rapidly walk to a position next to the Stealth, without being noticed by State Police Trooper Dickie or Chaplain Hall. (Plaintiff testified at his deposition that he had drunk approximately eighteen (18) beers during the day, January 19, 1996, before the vehicles arrived at the mobile home. No matter how incredible this rendition of the facts seems, I cannot disregard the sworn testimony supporting this version because, under Rule 56, I am not permitted to make factual or credibility determinations or to weigh the evidence. *See, e.g., Hirase-Doi v. U.S. West Communications*, 61 F.3d 777, 785 n. 4 (10th Cir.1995) ("[C]redibility determinations should not be made on summary judgment"); *Concrete Works of Colorado, Inc. v. City and County of Denver*, 36 F.3d 1513, 1518 (10th Cir.1994), *cert. denied*, 514 U.S. 1004 (1995) ("At the summary judgment stage, the judge's function is not to weigh the evidence and determine the truth of the matter"). Therefore, I am constrained to accept Plaintiff's version of the facts in deciding the motions for summary judgment.

he would flee or resist. "A couple seconds"[3] later, Chaplain Hall "pulled" or "tackled" Plaintiff to the ground, grabbed Plaintiff around his upper body from behind, and hit Plaintiff across the shins in order to physically restrain him. Either State Police Trooper Dickie or Chaplain Hall then handcuffed Plaintiff. State Police Trooper Dickie did not order or instruct Chaplain Hall to take any action.

At approximately 12:30 a.m. on January 20, 1996, State Police Trooper Dickie placed Plaintiff under arrest and placed him in the back of State Police Trooper Dickie's police vehicle. After Plaintiff was placed in the police vehicle, he was told that he had been arrested because of "something" that had happened that evening involving his driving of the Stealth. He was also told that he had been arrested because he was running away from Chaplain Hall and State Police Trooper Dickie. Plaintiff responded to State Police Trooper Dickie and Chaplain Hall that he did not run away from them. State Police Trooper Dickie and Chaplain Hall transported Plaintiff to the Bernalillo County Detention Center where Plaintiff was detained for six hours before being released.

Plaintiff never made any statement to the officers indicating that he was not the driver of

---

[3]Plaintiff testified during his deposition which was taken on May 21, 1998 that he froze and "a couple of seconds" later, he was pulled to the ground. The meaning of "a couple of seconds" is quite unclear from Plaintiff's testimony. *See Plaintiff's Deposition* at p. 74.

the Stealth.[4]  No one at the mobile home told the officers that Plaintiff was not the driver.[5]

State Police Trooper Dickie charged Plaintiff with driving while intoxicated, reckless driving, and resisting arrest.

On March 26, 1996, after a trial on the merits, all charges against Plaintiff were dismissed. At trial, State Police Trooper Dickie testified that Plaintiff, after his arrest, had made admissions of guilt and apologized to the Defendants. State Police Trooper Dickie's first mention of Plaintiff's admissions was at trial, and State Police Trooper Dickie did not record Plaintiff's statement. Likewise, Chaplain Hall first mentioned on the day of Plaintiff's trial that Plaintiff had made admissions and apologized to Defendants.

---

[4]Plaintiff testified during his deposition that "all I said is that why would they be arresting me because I wasn't, you know, running away from them . . . . I told them that I wasn't running away from them." *See Plaintiff's Deposition* at pp. 94-95.  Of course, even if this is true, it does not establish that Plaintiff told them that he was not the driver of the Stealth.

[5]Plaintiff's girlfriend, Rita Rivera, stated in an affidavit dated November 6, 1996:

> Finiano asked the cops what was going on but the cops did not reply. Finiano asked what Bonifacio [the Plaintiff] was being arrested for but again the cops did not respond. Bonifacio was placed in the cop car. I asked again what they were arresting Bonifacio for and the state trooper said they had clocked him driving at about 106 m.p.h. I said they couldn't have but the trooper did not pay any attention to me and did not ask me any questions but just went on talking on his radio.

Finiano Gonzales testified in his affidavit dated November 6, 1996, "When I asked the cops why they were arresting my brother and where they were taking him, they did not answer but just told me to go inside." This testimony does not establish that Ms. Rivera or Finiano told State Police Trooper Dickie or Chaplain Hall that Plaintiff was not the driver. Finiano also testified that he "saw and heard my brother [Plaintiff] trying to talk to them and explain that he had not been driving the car," but Plaintiff's own sworn testimony does not support this proposition. This "scintilla of evidence," which is hearsay, is not admissible evidence and cannot overcome defendants' motion for summary judgment.

6

## I. LEGAL STANDARD

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "'secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting FED.R.CIV.P. 1). A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, as well as any affidavits, "show that there is no genuine issue as to any material fact . . . ." *Id.* "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)). Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Harsha v. United States,* 590 F.2d 884, 8887 (10th Cir. 1979), the burden on the moving party may be discharged by demonstrating to the district court that there is an absence of evidence to support the nonmoving party's case. *Celotex*, *supra* at 325. In such a situation, the moving party is entitled to judgment as a matter of law, "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id*. at 322. The non-moving party must present more than a mere scintilla of evidence in order to overcome a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251, 106 S.Ct. 2505, 2511 (1986) ("[B]efore the evidence is left to the jury, there is a preliminary question for the judge . . . whether there is any upon which a jury could properly

7

proceed to find a verdict for the party producing it"). *See also Hom v. Squire*, 81 F.3d 969, 973 (10th Cir. 1996) (citing *Anderson*, *supra,* for the proposition, "the non-moving party must present more than a mere scintilla of evidence").

### III.  ANALYSIS

**A.     Motion for Partial Summary No. I: Fourth Amendment Illegal Seizure and Excessive Force Claims and Fourteenth Amendment Conspiracy Claim**

Defendants' first motion addresses Counts I through III of Plaintiff's Complaint.

*1.     Qualified Immunity*

*– Overview*

Qualified immunity shields police officers from suit.  It serves to protect government officers from having to defend themselves against baseless lawsuits.  *Pueblo Neighborhood Health Centers v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988).  An official is entitled to qualified immunity whenever his or her "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

Courts have adopted an objective test in determining whether a defendant is entitled to qualified immunity.  *Id.* at 815.  In deciding if a defendant has violated clearly established law, the court examines whether the law was clearly established at the time of the defendant's actions.  *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985).  As both the Supreme Court and the Tenth Circuit have held, "'the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'"  *Albright v. Rodriguez*, 51 F.3d 1531, 1535 (10th Cir. 1995) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  To find that the law

was clearly established at the time of the alleged violation, ordinarily there must be a Supreme Court or Tenth Circuit decision on point. *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992). The requirement that the law be clearly established requires "some, but not necessarily precise, factual correspondence" between the cases predating the alleged violation and the facts in question. *Calhoun v. Gaines*, 982 F.2d 1470, 1475 (10th Cir. 1992).

Once a defendant asserts qualified immunity, the burden shifts to the Plaintiff to show both facts and law to establish that the defendant is not entitled to qualified immunity. *Workman v. Jordan*, 32 F.3d 475, 479 (10th Cir. 1994), *cert. denied*, 514 U.S. 1015 (1995). A plaintiff must do more than merely allege that the defendant has violated a right. The "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "Plaintiff must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity." *Albright*, 51 F.3d at 1535. "In the light of pre-existing law the unlawfulness must be apparent." *Id.* (citation omitted). When a defendant raises the qualified immunity defense in a Rule 56 motion for summary judgment, the court must permit the Plaintiff the limited opportunity allowed by Federal Rules of Civil Procedure 12(b)(6) and 56 to come forward with facts or allegations sufficient to show that the law was clearly established when the alleged violation occurred. If the Plaintiff fails to carry his burden, then the defendant is entitled to qualified immunity.

"[T]he doctrine of qualified immunity leaves 'ample room for mistaken judgments.'" *Guffey v. Wyatt*, 18 F.3d 869, 873 (10th Cir. 1994) (quoting *Malley v. Briggs*, 475 U.S. 335, 343, 106 S.Ct. 1092, 1097, 89 L.Ed.2d 271 (1986)). *See also, e.g., BeVier v. Hucal*, 806 F.2d

123 (7th Cir. 1986) ("Police officers are allowed to make mistakes, but those mistakes must be reasonable ones").

### – Qualified Immunity in Excessive Force Cases Specifically

Excessive force cases are also analyzed under the reasonableness standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct 1865 (1989). The factors to be used in determining whether the force used by an officer was reasonable include the severity of the crime at issue, whether the subject poses an immediate threat to the safety of the officer, and whether the subject is resisting arrest. *Graham*, 490 U.S. at 396.

In determining the reasonableness of an officer's action, the Supreme Court has directed courts to take into account the "tense, uncertain, and rapidly evolving" circumstances which officers face when making judgments:

> The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight . . . The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.

*Graham v. Connor*, 490 U.S. at 396-397, 109 S.Ct. at 1872. *See also Warwick v. Snow*, No. 95-5250, 1996 WL 355570 (10th Cir. June 27, 1996); *Diaz v. Salazar*, 924 F.Supp. 1088 (D. N. M. 1996) (citing to *Graham v. Connor*).

### 2.  Plaintiff's Count I: "Deprivation of Rights under the Fourth Amendment: Arrest without Just and Probable Cause"

Significantly, Plaintiff admitted at the pretrial conference that there was probable cause to arrest the driver of the Stealth, but argues that the Plaintiff's mere presence near the Stealth upon State Police Trooper Dickie's and Chaplain Hall's arrival at Plaintiff's mobile home does not

10

establish reasonable suspicion or probable cause to arrest Plaintiff.  Although it is generally true the mere presence of a criminal defendant at the scene of a crime, standing alone, is not enough to establish reasonable suspicion, here the officers did not base their arrest of Plaintiff upon "mere presence."  Rather, defendants based the arrest of Plaintiff upon: (1) the radio transmission report; (2) their observing the driver of the Stealth violating the law by moving at a highly excessive speed while traveling on I-40; (3) the failure of the driver of the Stealth to stop after State Police Trooper Dickie turned on the emergency lights and siren; (4) their continuous, virtually uninterrupted observations of the red Stealth from the moment they encountered it on I-40 up to and including the moment at which they saw it park in front of the mobile home; (5) the undisputed fact that State Police Trooper Dickie never lost sight of the entirety of the Stealth; (6) their failure to observe Finiano flee from the Stealth and retreat to the back door of the mobile home; (7) their failure to see the Plaintiff emerge from his mobile home and go to within four inches of the Stealth; (8) Plaintiff's physical position at the time they arrived – standing in very close proximity to the Stealth and the mobile home at the moment they arrived.

     This is a § 1983 case in which the Defendants have raised a qualified immunity defense which is judged from the perspective of a reasonable police officer.  Interestingly, counsel for Plaintiff stated at the pretrial conference that Plaintiff is not contending that the police should have seen the Plaintiff come out of the mobile home after Finiano's arrival, nor is Plaintiff contending that State Police Trooper Dickie or Chaplain Hall should have seen Finiano fleeing from the scene.

     Based upon Plaintiff's admissions, and the undisputed material facts in the light most favorable to the Plaintiff, State Police Trooper Dickie and Chaplain Hall are entitled to qualified

immunity on Plaintiff's Count I claim alleging an "arrest without just and probable cause." A reasonable police officer in defendants' position would not have understood that their arrest of Plaintiff violated Plaintiff's clearly established rights about which a reasonable person would have known.[6] Under the facts of this case, it was reasonable for defendants to assume that Plaintiff was the driver of the Stealth. Even if defendants were mistaken about the driver's identity, this mistake was reasonable under the circumstances. *See, e.g., Sevigny v. Dicksey*, 846 F.2d 953, 957 (4th Cir. 1988) ("a reasonable belief entitling to immunity might obviously exist despite reasonable misapprehension of either conduct or law; it is precisely the function of qualified immunity in this context to excuse reasonable mistakes in making the composite factual and legal judgments leading to the arrests").

### 3. Plaintiff's Count II: "Deprivation of Rights under the Fourth Amendment: Excessive Use of Force"

The fact that there was probable cause to arrest Plaintiff does not mean that it was permissible for the defendants to use excessive force in effectuating the arrest. It was appropriate for State Police Trooper Dickie to step out of the police car and to approach Plaintiff with his gun drawn because the driver of the Stealth, who the defendants reasonably believed to be Plaintiff, had engaged in reckless conduct. In addition, the driver of the Stealth went to great lengths – for reasons unknown to the defendants – to evade the defendants. It was reasonable for State Police Trooper Dickie, at the inception of the arrest, to command Plaintiff to stop and to draw his weapon to protect Chaplain Hall and himself. As these were the only actions Plaintiff alleges that

---

[6] Because I have concluded that the defendants had probable cause to arrest the Plaintiff at the moment they arrived at the mobile home, it is unnecessary to discuss the concept of "reasonable suspicion."

State Police Trooper Dickie took, he is entitled to qualified immunity because his actions were objectively reasonable.

However, there is a genuine issue of material fact regarding the objective reasonableness of Chaplain Hall's actions. The facts in the light most favorable to the Plaintiff indicate that after State Police Trooper Dickie ordered him to stop, Plaintiff immediately complied and "froze." After that point, Plaintiff did nothing to indicate that he would flee or resist. Accepting Plaintiff's testimony as true, it was not objectively reasonable for Chaplain Hall to then tackle or to pull Plaintiff to the ground, to grab Plaintiff's upper body from behind, and to hit Plaintiff across the shins.[7] Therefore, summary judgment should be granted in favor of State Police Trooper Dickie on Plaintiff's Count II excessive force claim, but genuine issues of material fact preclude summary judgment in favor of Chaplain Hall on this claim.

### 4. Plaintiff's Count III:"Deprivation & Conspiracy to Deprive Plaintiff of Right to Due Process under the Fourteenth Amendment"

"[To] recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of [constitutional or federally protected] rights; pleading and proof of one without the other will be insufficient." *Dixon v. City of Lawton, Okla.*, 898 F.2d 1443, 1449 (10th Cir. 1990). Plaintiff must prove that there was an agreement among the alleged conspirators. *Id.* Insufficient evidence supports Plaintiff's Count III alleging that

---

[7]The defendants have not raised the issue of whether Chaplain Hall is a proper defendant in this § 1983 action. Therefore, for the purposes of this discussion, I assume that he was acting in the capacity of a state actor on the night in question.

defendants conspired to violate Plaintiff's Fourteenth Amendment Rights.[8]  Therefore, Count III will be dismissed with prejudice.

      **B.**      <u>**Motion for Partial Summary Judgment No. II: "State Law False Arrest, False Imprisonment, Assault, Battery and Malicious Prosecution Claims**</u>"

Defendants' second motion addresses Counts IV through VIII of Plaintiff's Complaint.

      *1.*      *Plaintiff's Count IV, "Assault" and Count V, "Battery"*

Defendants argue that summary judgment should be granted on Plaintiff's assault and battery claims because their actions and their verbal commands were supported by probable cause and done in good faith.  For the same reasons stated above during the discussion of Plaintiff's Fourth Amendment excessive force claim, summary judgement will be granted in favor of State Police Trooper Dickie on Plaintiff's Count IV and Count V assault and battery claims, but genuine issues of material fact preclude summary judgment in favor of Chaplain Hall on these claims.

      *2.*      *Plaintiff's Count VI, "False Arrest" and Count VII, "False Imprisonment"*

Defendants argue that the torts of false arrest and false imprisonment appear to have been merged into the single tort of false imprisonment in New Mexico, and plaintiff does not dispute this contention.  In New Mexico "[f]alse imprisonment involves the unlawful interference with the

---

[8]The only evidence Plaintiff has presented in support of this claim that State Police Trooper Dickie and Chaplain Hall first mentioned Plaintiff's admissions of guilt and an apology at Plaintiff's trial.  This meager evidence is not enough to overcome summary judgment.  Plaintiff has no evidence of an agreement between State Police Trooper Dickie and Chaplain Hall.  Plaintiff also has insufficient evidence of an actual deprivation of federal or constitutional rights as a result of this "conspiracy."  State Police Trooper Dickie did not instruct Chaplain Hall to tackle or to use force against the Plaintiff.  Even if a fact-finder were to conclude that Plaintiff's Fourth Amendment rights were violated as a result of Chaplin Hall's excessive force, this conclusion would not support Plaintiff's conspiracy claim.

personal liberty or freedom of locomotion of another." *Diaz v. Lockheed Electronics*, 95 N.M. 28, 30 (Ct. App. 1980). If defendants had "reasonable cause to restrain plaintiff, then plaintiff's suit for false imprisonment fails." *Id.* Because probable or reasonable cause to arrest Plaintiff existed, the defendants' interference with his personal liberty was not unlawful. Hence, defendants are entitled to summary judgement on these claims.

### 3. Count VIII, "Malicious Prosecution"

The New Mexico Supreme Court has recently held that the formerly separate torts of malicious prosecution and abuse of process should be merged into the single tort of "malicious abuse of process," defined by the following elements: (1) the initiation of judicial proceedings against the plaintiff by the defendant; (2) an act by the defendant in the use of process other than such as would be proper in the regular prosecution of the claim; (3) a primary motive by the defendant in misusing the process to accomplish an illegitimate end; and (4) damages. *Devaney v. Thriftway Marketing Corp.*, 124 N.M. 512, 953 P.2d 277, 283 (1997), *cert. denied*, 118 S.Ct. 2296 (1998). In its discussion of the second element, the court stated that "the traditional elements of a lack of probable cause under the former tort of malicious prosecution and of an act not proper in the regular prosecution of a claim under the former tort of abuse of process serve to protect the important interest of access to the courts, thereby preventing any chilling effect on the legitimate use of process." *Id*. at 283. For this reason, the court emphasized that the tort must be narrowly construed. *Id.* at 284. The New Mexico Supreme Court concluded that "to demonstrate the overt act required in an action for malicious abuse of process, a plaintiff may show the defendant filed an action against that plaintiff without probable cause." *Id*. at 285. As stated above, State Police Trooper Dickie and Chaplain Hall had probable cause to arrest Plaintiff

15

for traffic violations and for evading a police officer.  Plaintiff never informed the defendants that he was not the driver of the Stealth and there is no evidence that Plaintiff told the defendants at any time before his trial that he was not the driver.  Probable cause existed to file an action against Plaintiff.

A plaintiff asserting a claim of malicious abuse of process can also demonstrate a misuse of process "through some irregularity or impropriety suggesting extortion, delay, or harassment . . . . Under this method, the act might be a procedural irregularity, or might be an act that otherwise indicates the wrongful use of proceedings, such as an extortion attempt."  *Id*. at 287 (internal citations omitted).  Again, there was insubstantial evidence suggesting procedural impropriety.  Therefore, Count VIII will be dismissed with prejudice.

IT IS THEREFORE ORDERED that:

(1) Defendants' "Motion for Partial Summary No. I: Fourth Amendment Illegal Seizure and Excessive Force Claims and Fourteenth Amendment Conspiracy Claim" (Doc. No. 23) is GRANTED IN PART and DENIED IN PART;

(2) Defendants' "Motion for Partial Summary Judgment No. II:  State Law False Arrest, False Imprisonment, Assault, Battery and Malicious Prosecution Claims" (Doc. No. 27) is GRANTED IN PART and DENIED IN PART;

(3) Count I ("Deprivation of Rights under the Fourth Amendment: Arrest without Just and Probable Cause"), Count III ("Deprivation & Conspiracy to Deprive Plaintiff of Right to Due Process under the Fourteenth Amendment"), Count VI ("False Arrest"), Count VII ("False Imprisonment"), and Count VIII ("Malicious Prosecution") of Plaintiff's Complaint will be dismissed with prejudice;

(4)   Count II ("Deprivation of Rights under the Fourth Amendment: Excessive Use of Force") will be dismissed with prejudice as to Defendant James Dickie only;

(5)   Count IV ("Assault") will be dismissed with prejudice as to Defendant James Dickie only; and

(6)   Count V ("Battery") will be dismissed with prejudice as to Defendant James Dickie only.

_____
UNITED STATES DISTRICT JUDGE